## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PLAQUEMINES PARISH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6712** |
| **JUNE ENERGY, INC. ET AL.** | **SECTION "L"** |

## <u>ORDER & REASONS</u>

Before the Court are motions to remand filed by Plaintiff Plaquemines Parish in three separate cases (No. 13-6709 Rec. Doc. 19; No. 13-6712 Rec. Doc. 16; 13-6732 Rec. Doc. 19). As the arguments in these motions are almost identical, the Court will dispose of these motions in one Order & Reasons and highlight any material distinctions. Thus, having read the parties' briefs, reviewed the applicable law, and heard oral argument, the Court now issues this Order & Reasons.

### I.    BACKGROUND

The Parish of Plaquemines ("the Parish") filed suit on its own behalf and on behalf of the State of Louisiana against many different defendants. The Parish relies solely on a body of Louisiana state law called the State and Local Coastal Resources Management Act of 1978, La. R.S. § 49:214.21, *et seq.*, ("the CZM Laws" or "SLCRMA"), along with the state and local regulations, guidelines, ordinances, and orders promulgated thereunder. The CZM Laws regulate certain "uses" within the Coastal Zone of Louisiana through a permitting system. *See* La. R.S. § 49:214.30.

The CZM Laws prohibit anyone from engaging in a "use" without first applying for and

receiving a coastal use permit.  A "use" is any activity within the Coastal Zone which has a

direct and significant impact on coastal waters.  La. R.S. § 49:214.23(13).  The CZM Laws

further divide "uses" within the Coastal Zone into uses of *state* concern and uses of *local*

concern. La. R.S. § 49:214.25(A).  The State issues permits relating to "uses of state concern"

in the Coastal Zone, and local governments with "approved programs" issue permits for

"uses of local concern."

Generally, the Parish alleges that certain of Defendants' oil and gas exploration,

production, and transportation operations associated with the development of the Coquille Bay,

Delta Duck Club, Grand Bay, Main Pass Block 47, Main Pass Block 69, Raphael Pass,

and Romere Pass Oil & Gas Fields in Plaquemines Parish were conducted in violation of the

CZM Laws, and that these activities caused substantial damage to land and waterbodies

located in the Coastal Zone within Plaquemines Parish.  The term "Operational

Area" is used throughout the Petition to describe the geographic extent of the area within

which the complained-of operations and activities *at issue in this action* occurred.  The

Operational Area for this action comprises the geographic regions identified on the maps

contained in Exhibit B to the Petition.

The Parish seeks all damages and remedies appropriate under the CZM Laws,

including but not limited to, restoration and remediation costs; actual restoration of

disturbed areas to their original condition; costs necessary to clear, revegetate, detoxify and

otherwise restore the affected portions of the Plaquemines Parish Coastal Zone as near as

practicable to its original condition; declaratory relief; litigation costs and expenses and

attorneys' fees.

## II.     PROCEDURAL BACKGROUND

The Parish originally filed these three actions, and a number of others, in state court. The Parish's well-pleaded complaint sought relief only under the CZM Laws, disavowing at great length any other type of claim, cause of action, or legal theory potentially cognizable on the facts alleged, including any that could form the basis for jurisdiction in a federal court.

Defendants nonetheless removed all these actions to the Eastern District of Louisiana alleging four bases for original jurisdiction in federal court: (1) diversity jurisdiction; (2) Outer Continental Shelf Lands Act; (3) general maritime law; (4) federal question (federal enclave). Once in federal court, the cases were never consolidated and were spread out among the district judges.  These cases totaled twenty-eight separate actions.

The Parish moved to remand the cases, and the Judges all stayed proceedings while Judge Zainey, who had the lowest numbered docketed case, *Plaquemines Parish v. Total et al.,* 13-6693, ruled on the motion to remand.  On December 1, 2014, Judge Zainey granted remand, finding no basis for federal jurisdiction. In the three cases before this Section of the Court, the parties jointly moved for a status conference to address a briefing schedule regarding remand. The parties noted that they intended to offer several case-specific expert materials in connection with certain arguments, and to address Judge Zainey's ruling in *Total*.  The Court issued a briefing schedule and picked a date to hear oral argument on the motions.

Prior to oral argument, Judge Africk and Judge Lemelle both granted the motions to remand in their respective cases, bringing the total number of Parish cases remanded to state court to ten (10).  Judge Africk followed Judge Zainey's reasoning in *Total* when he remanded *Plaquemines Parish v. Rozel Operating Company, et al,.* along with two other cases, back to state court.  Judge Lemelle followed suit, incorporating both opinions when he remanded

*Jefferson parish v. Anadarok E&P Onshore LLC, et al.* and three other cases back to state court. Since oral argument, Judge Feldman, Judge Barbier, and Judge Morgan all remanded their respective cases.  As noted by Judge Africk, the Court recognizes the following:

> The Court again notes that it does not write on a blank canvas with these issues.  The Court is persuaded by the thoughtful reasoning in *Total*, and sees little benefit in rehashing arguments that have been thoroughly aired and addressed.  Accordingly, the Court will address the parties' arguments only to the extent that they raise arguments not briefed in that case.

*Plaquemines Parish v. Rozel Operating Company, et al.*, CIV. A. No. 13-6722, 2015 WL 403791, at * 2 (E.D. La. Jan. 29, 2015).  With this in mind, the Court turns to the three motions before it.

### III.    LAW AND ANALYSIS

The removing party bears the burden of establishing jurisdiction.  *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001).  Removal jurisdiction "raises significant federalism concerns" and is strictly construed.  *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir. 1988).  Doubts regarding jurisdiction should be resolved against exercising jurisdiction. *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000).

Plaintiffs' claims against the Defendants allege violations of CZM laws.  By way of background, "coastal states own the land in their 'territorial sea,' which includes 'all lands permanently or periodically covered by tidal waters…seaward to a line three geographical miles distant form the coast line of each state.'"  Ann E. Carlon, Andrew Mayer, *Reverse Preemption*, 40 Ecology L.Q. 583, 600 (2013).  The land beyond the states' territorial sea constitutes the outer continental shelf "OCS," and the federal government owns that land.

Defendants put forth three bases for removal jurisdiction: (1) OCSLA jurisdiction pursuant to 43 U.S.C. § 1349(b)(1); (2) diversity jurisdiction pursuant to 28 U.S.C. § 1332; (3) and general maritime jurisdiction pursuant to 28 U.S.C. § 1333.  During oral argument, Defense counsel's argument largely focused on the Court's OCSLA jurisdiction and urged that the Defendants had not put forth the same OCSLA argument for the other Judges.  The Court will therefore address that argument in greater detail.

### A.  OCSLA Jurisdiction

Defendants argue that this Court has federal question jurisdiction pursuant to the Outer Continental Shelf Lands Act or OCSLA.  During oral argument, the Defendants averred that the central question is whether this suit for damages to the Parish's land, based on the construction and maintenance of an OCS pipeline, triggers OCSLA jurisdiction.  Defendants affirmatively concluded that it does as OCSLA jurisdiction does not require the injury-inducing activity or the injury to be on the OCS.  As in their prior arguments, Defendants emphasized that Congress intended federal courts to decide disputes that threaten the recovery of minerals on the OCS, and this suit falls squarely within this policy.  In their presentation, Defendants showed the permits and corresponding pipelines at issue in these three cases, emphasizing how the permits themselves referenced the OCS and the pipelines serve as "integral components" to operations on the OCS.  These alleged permit violations, Defendants claimed, stem from pipelines that carry minerals from the OCS to shore and therefore trigger OCSLA jurisdiction.  Defendants noted that Judge Zainey, Judge Affrick, and Judge Lemelle had not seen this evidence when they issued their rulings.

Plaintiffs re-urged the *Total*, *Rozel*, and *Anadarko* rulings and emphasized that the disputed activity and injury did not occur on the OCS but within the confines of the Coastal Zone

5

in Plaquemines Parish.  Plaintiffs argued that while the permits may list "OCS,", the activities are wholly within the Coastal Zone because Louisiana does not have the authority to issue permits that regulate the OCS.  Finally, Plaintiffs claimed that Defendants' logic would compel OCSLA jurisdiction over a claim related to a pipeline in New York merely because it is connected to an OCS pipeline.

The pertinent section of OCSLA provides that "the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . ."  43 U.S.C. § 1349.  "The Fifth Circuit has interpreted this language as straightforward and broad." *In re DEEPWATER HORIZON*, 745 F.3d 157 (5th Cir. 2014).  A plaintiff does not need to expressly invoke OCSLA in order for it to apply.  *Id.* at 163.

The Fifth Circuit has recently explained that "[c]ourts typically assess jurisdiction under this provision in terms of whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation." *Id.* *See also In re Oil Spill Rig Deepwater Horizon in Gulf of Mexico*, 747 F.Supp. 2d 704, 708 (E.D. La. 2010).  In order to determine whether a case "arises out of, or in connection with" the operation, the Fifth Circuit applies a "but-for" test, "i.e., but for the operation, would the case or controversy have arisen." *In re Oil Spill Rig Deepwater Horizon in Gulf of Mexico*, 747 F.Supp.2d at 708; *see also Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) ("To determine whether a cause of action arises under OCSLA, the Fifth Circuit applies a but-for test, asking whether: (1) the facts underlying the complaint occurred on the proper situs; (2) the

6

plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment.").

While this Court recognizes that Defendants have presented this Court with a slightly different OCSLA jurisdictional argument, the Court nevertheless reaches the same conclusion as the other Judges.  The Court is not persuaded by Defendants' argument that the permits compel OCSLA jurisdiction because the permits reference the OCS and regulate a pipeline network connected to the OCS network.  Rather, precedent demands that there must be an "operation on the Outer Continental Shelf" to satisfy the first element of OCSLA jurisdiction, and there is no such operation here.  While Plaintiffs' Petition alleges permit violations of pipes that originate on the OCS and carry minerals from the OCS, the mere connection to the OCS and carrying of minerals does not constitute an operation *on* the OCS.  Rather, the alleged permit violations are wholly within the Louisiana's Coastal Zone.

Such a finding would contravene prior Fifth Circuit precedent, which has consistently held that the operation must occur on the OCS when a cause of action alleges a physical act.  The Defendants seek to take refuge in *Ronquille v. Aninoil Inc.*, but such reliance is misplaced.  In that case, the court found OCSLA jurisdiction over Plaintiff's claims for damages from alleged exposure to asbestos at an onshore facility.  No. 14-164, 2015 WL 4387337 (E.D. La. Sept. 4, 2014) (Engelhardt, J.).  The court found OCSLA jurisdiction because the plaintiff alleged that he had been exposed to asbestos through his work, which "included the unloading and loading of barges, other boats, and trucks that transported equipment and pipe from OCS platforms."  *Id.* at *2.  This, the court determined, constituted direct support for OCS rigs and thus provided a "sufficient connection to the operations on the OCS."  *Id.*  But this finding goes to the second element of OCSLA jurisdiction: there was never a question as to whether the facts satisfied the

7

operational element.  This differs from the instant case where, as noted in the other Judges'
opinions, Defendants are unable to satisfy the first element and demonstrate that the injury-
inducing activity constituted an operation on the OCS.

Indeed, *Ronquille* is in line with other Fifth Circuit precedent where the court found
OCSLA jurisdiction when an OCS worker suffered an injury off of an OCS fixed platform.  *See
Hufnagel v. Omega Serv. Indus. Inc.*, 182 F.3d 340 (5th Cir. 1999) (determining OCSLA
jurisdiction when a platform worker was housed on an adjoining vessel and injured while
working on the platform and performing certain maintenance or repair operations); *Recar v.
CNG Producing Co.*, 853 F.2d 367 (5th Cir. 1988) (holding OCLSA applicable to a personal
injury suit brought by platform worker when a rope from which he was swinging broke and
caused him to fall onto an adjacent vessel); *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337
(5th Cir. 1982) (applying OCSLA when a helicopter pilot crashed on the OCS while ferrying
employees to production platforms).  Like *Ronquille*, the Fifth Circuit in these cases focused its
analysis on the second OCSLA element, the "but for" test, as all of the injuries stemmed from
fixed platforms on the OCS and therefore clearly satisfied the first OCSLA element.  Here,
Defendants do not reach the second element because the complained-of activities occurred
within the Coastal Zone and not on the OCS.

In sum, Defendants' argument that the permits invoke OCSLA jurisdiction because the
regulated pipeline connects to the OCS is without merit.  To subscribe to the argument that
OCSLA jurisdiction is triggered by *any* claim concerning a pipe that transports minerals
originating from the OCS would open the floodgates to cases that could invoke OCSLA
jurisdiction far beyond its intended purpose.  For instance, a claim seeking redress for an injury
caused by a pipeline in New York would trigger OCSLA jurisdiction because the New York

pipeline transports minerals that originated on the OCS and is connected to an OCS pipeline. Such a result would be absurd.  It is therefore evident that this Court cannot exercise federal jurisdiction over these claims pursuant to OCSLA.

### B.  General Maritime Jurisdiction and Diversity Jurisdiction

Regarding Defendants' other two bases for federal jurisdiction, general maritime jurisdiction and diversity jurisdiction, the Court finds persuasive the holdings and reasoning set forth in *Parish of Plaquemines v. Total Petrochemical & Refining USA, Inc.,* No. 13–6693, 2014 WL 6750649 (E.D. La. Dec. 1, 2014) (Zainey, J); *Plaquemines Parish v. Rozel Operating Co.,* No. 13–6722, 2015 WL 403791 (E.D. La. Jan. 29, 2015) (Africk, J.); *Jefferson Parish v. Anadarko E & P Onshore LLC,* No. 13–6701 (E.D.La. Mar. 9, 2015) (Lemelle, J.); and *Plaquemines Parish v. Hilcorp Energy Co.,* 13–6727, 2015 WL 1954640 (E.D. La. Apr. 29, 2015) (Feldman, J.); *Plaquemines Parish v. Devon Energy Prod. Co., LP*, No. 13-6716, 2015 WL 2229275 (E.D. La. May 12, 2015) (Barbier, J); *Plaquemines Parish v. Linder Oil Co.*, No. 13-6706, 2015 WL 2354183 (E.D. La. May 15, 2015) (Morgan, J).  The Court would also like to stress that it has already spoken and rejected the argument that 28 U.S.C. § 1441, as amended, effectively nullifies the savings-to-suitors clause and no longer requires a non-admiralty source of jurisdiction to remove a general maritime case.  *See Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp.*, 42 F. Supp. 3d 812, 819-20 (E.D. La. 2014).  As noted by the *Total* court, "while other district courts have been persuaded to recognize a change in the law, every other judge in this district to consider the issue has rejected it."  2014 WL 6750649 at *20.  *See also* Robert Force, *Understanding the Nonremovability of Maritime Cases: Lessons Learned from "Original Intent"*, 89 Tul. L. Rev. 1019, 1027-28 (2015) ("The conclusion [that 28 U.S.C. 1441, as amended, allows removal based on admiralty jurisdiction alone] is unwarranted given the history

9

and wording of the saving to suitors clause because the nonremovability of maritime claims historically has not been based on the removal statute—it has been based on the savings to suitors clause.").  The Court is therefore not inclined to change its position on the issue and is not persuaded by Defendants' jurisdictional argument based on general maritime law.

## IV.    CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Plaintiff's Motion to Remand (Rec. Doc. 16) is **GRANTED**.



New Orleans, Louisiana this 26th day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE